UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MORGAN S., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 22 CV 3116 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Morgan S. appeals the Acting Commissioner of Social Security's decision denying her applications for benefits. For the following reasons, plaintiff's motion to reverse the Acting Commissioner's decision [13] is granted, the Acting Commissioner's motion for summary judgment [15] is denied, and the case is remanded for further administrative proceedings.[1]

**Background**

In January 2018, plaintiff applied for disability insurance benefits and supplemental security income with an alleged onset date of January 14, 2018. [10-1] 13. The claims were denied initially, on reconsideration, and after a hearing with an administrative law judge (ALJ). [*Id.*] 13-30. The Appeals Council denied review in April 2022 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).

The ALJ reviewed plaintiff's claims in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since her alleged onset date. [10-1] 15. At step two, the ALJ determined that plaintiff had the following severe impairments: Ehlers-Danlos syndrome, status post remote left knee surgery, degenerative disc disease of the lumbar and cervical spine, obesity, attention deficit hyperactivity disorder, depressive disorder including bipolar disorder and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [10-1], which refer to the page numbers in the bottom right corner of each page.

schizoaffective disorder, anxiety disorder, personality disorder, posttraumatic stress disorder, and substance use disorder. [*Id.*] 16. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 16-21. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, provided, as relevant here, that plaintiff could (1) perform only simple tasks and make simple work-related decisions and (2) not tolerate a production rate pace but can meet end-of-day goals. [*Id.*] 21-29. At step four, the ALJ found that plaintiff had no past relevant work. [*Id.*]. At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that plaintiff could perform: mail clerk (12,900 jobs), routing clerk (104,800 jobs), laundry sorter (4,800 jobs), and sorter (2,200 jobs). Accordingly, the ALJ found that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that the ALJ erred in determining her mental RFC because the ALJ did not properly account for plaintiff's moderate limitation in concentrating, persisting, or maintaining pace (CPP). Plaintiff contends that the ALJ purported to account for that limitation by restricting her to simple work that does not entail a production-rate quota, but case law establishes that neither restriction is responsive to a claimant's CPP limitation. *See* [13] 7-10; [17] 2-4.

The ALJ's "RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). When an ALJ addresses a claimant's CPP limitations, the resulting RFC assessment "need not recite the precise phrase 'concentration, persistence, or pace,'" but "any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Jonah D. v. Dudek*, 22 CV 6460, 2025 WL 947892, at *5 (N.D. Ill. Mar. 28, 2025). "An RFC determination that a claimant can perform simple, routine work can accommodate a claimant's moderate limitation in CPP if (1) the ALJ has reasonably relied on the opinion of a medical expert who

2

translates CPP findings into an RFC determination or (2) the RFC adequately accounts for the claimant's demonstrated psychological symptoms." *Maria R. v. Kijakazi*, No. 19 C 8138, 2022 WL 16553139, at *4 (N.D. Ill. Oct. 31, 2022) (internal quotation marks, brackets, and citations omitted). If the ALJ relies on a narrative translation of the claimant's CPP limitations to formulate the RFC, "[t]he ALJ must consider whether the consultants' narrative RFC assessment adequately encapsulates and translates the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (internal quotation marks omitted).

In this case, the ALJ relied on the opinions of two reviewing psychologists to determine plaintiff's mental RFC. In the "checklist" section of their reports, *see Monday v. Comm'r of Soc. Sec.*, Case No. 4:23-CV-96, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (describing agency reviewers' method for assessing claimant's mental RFC), Dr. Unversaw and Dr. Neville each found that plaintiff was moderately limited in her ability to (1) carry out detailed instructions, (2) maintain attention and concentration for extended periods, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and (4) perform at a consistent pace without an unreasonable number and length of rest periods. [10-1] 75, 90-91. Dr. Unversaw, the initial reviewer, provided a narrative translation of those checklist findings: plaintiff was "able to understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with changes in a routine work setting." [*Id.*] 76. At the reconsideration level, Dr. Neville adopted that same narrative statement of plaintiff's mental limitations. [*Id.*] 91-92. The ALJ concluded that these opinions were "persuasive" because they were "supported by and are consistent with the records," adopted the simple-work limitation, and added a further restriction of "no production rate pace but can perform end of the day goals." [*Id.*] 21, 28.

The Court concludes that substantial evidence does not support the mental RFC determination because the reviewing psychologists' narrative statements did not "adequately encapsulate[ ] and translate[ ]" their checklist findings. *Pavlicek*, 994 F.3d at 783. Despite agreeing in the checklist portions of their reports that plaintiff was moderately limited in her abilities to concentrate for extended periods, complete the workday and workweek without interruptions from psychologically based symptoms, and work at a consistent pace without an unreasonable number of breaks, neither Dr. Unversaw nor Dr. Neville addressed those limitations in the narrative sections of their reports. Rather, the narrative statements addressed only two areas where the doctors agreed plaintiff had *no* limitations: the ability to execute simple instructions and the ability to make simple work-related decisions. *See* [10-1] 75, 90 (finding that plaintiff was "not significantly limited" in these areas). For her part, the ALJ did not mention the doctors' checklist findings, let alone explain why she had not incorporated them into the RFC assessment. *See* [*id.*] 28. Given the failures by the

3

reviewing doctors and the ALJ to account for several of plaintiff's CPP limitations, the mental RFC determination is not supported by substantial evidence. *See Monday*, 2025 WL 865146, at *6-8 (remanding where ALJ based mental RFC determination solely on agency reviewers' narrative statements, but narrative statements did not encapsulate reviewers' findings that claimant was moderately limited in ability to concentrate for extended periods and to complete a workday and workweek); *Cassie W. v. O'Malley*, No. 23 C 14718, 2024 WL 4590809, at *3-4 (N.D. Ill. Oct. 28, 2024) (remanding where ALJ did not discuss two CPP-related limitations or include those limitations in hypothetical posed to vocational expert).

The Court further observes that the vocational expert testified that a claimant who could not remain on task for at least 90% of the workday was not employable. [10-1] 62. That testimony makes plaintiff's moderate limitations in her abilities to pay attention for extended periods of time, to complete a workday and work week, and to work at a consistent pace without taking an unreasonable number of breaks all the more relevant, as each of these limitations implicate her ability to stay on task. *See Monday*, 2025 WL 865146, at *6 (checkbox limitations related to concentrating for extended periods and completing normal workday and workweeks were "highly relevant" in light of vocational expert's testimony that "employers generally tolerate no more than 10% of off-task activity," and remand was required because limitations were not "translated or encapsulated into the narrative upon which the ALJ relied"). Defendant dismisses plaintiff's argument about the need for an off-task limitation in the RFC, pointing out that neither agency reviewer identified such a limitation. *See* [16] 7. But this argument lacks merit, as it assumes that the reviewers and the ALJ were free to ignore the limitations in the checkbox section of the reviewers' reports. *See Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored."); *see also Pavilicek*, 994 at 783 (narrative translations must encapsulate or translate all checklist findings).[2]

Finally, the restriction against production pace work cannot save the ALJ's decision. "Limiting plaintiff to jobs that required her to perform only simple, routine tasks and make simple decisions without having to maintain a production rate pace did not account for the possibility that, given [her] moderate difficulties in concentration, persistence, and pace, plaintiff might not be able to do so on a sustained basis at any pace, even a slow one." *Daiva A. v. Kijakazi*, 2022 WL 1155063, at *4 (N.D. Ill. Apr. 18, 2022). Here, the ALJ did not explain why a production pace limitation would properly account for plaintiff's moderately limited ability to concentrate for extended periods, complete a normal workday and workweek, and maintain a consistent pace without an unreasonable number of breaks. *Compare Natalie T. v. Kijakazi*, No. 21 C 1098, 2023 WL 4549748, at *4 (N.D. Ill. July 14, 2023) ("Again, without medical input, it is not clear how these findings translate into an

---

[2] Because this issue is dispositive, the Court does not address plaintiff's other grounds for remand.

RFC for simple work with no production quotas."), *with Erica A. v. Dudek*, No. 23-cv-16889, 2025 WL 885706, at *2 (N.D. Ill. Mar. 21, 2025) (affirming denial of benefits for claimant with moderate CPP limitations where medical expert "testified that an end-of-day quota requirement would address *this Plaintiff's* needs").

## Conclusion

Plaintiff's motion to reverse the Acting Commissioner's decision [13] is granted, the Acting Commissioner's motion for summary judgment [15] is denied, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: April 21, 2025**